# PENNSYLVANIA
# SPECIAL EDUCATION HEARING OFFICER

DECISION

EXPEDITED DUE PROCESS HEARING

Name of Child:

ODR #01127/09-10 AS

Date of Birth:

Date of Hearing:
May 28, 2010

CLOSED HEARING

| | |
|---|---|
| Parties to the Hearing: | Representative: |
| Mr. and Mrs. | Catherine Reisman, Esquire |
| | 20 East Redman Avenue |
| | Haddonfield, New Jersey 08833 |
| Wallingford Swarthmore School District | Timothy Gilsbach, Esquire |
| 101 Plush Mill Road | Fox Rothschild |
| Wallingford, Pennsylvania 19086 | Suite 200  PO Box 3001 Ten |
| | Blue Bell, Pennsylvania 19422 |
| Date Transcript Received: | May 31, 2010 |
| Date of Decision: | June 5, 2010 |
| Hearing Officer: | Linda M. Valentini, Psy.D., CHO |

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

## Background

Student is an elementary-school-age eligible student whose family resides in the Wallingford Swarthmore School District (hereinafter District). Student is currently placed at a private school in a neighboring state, funded by the District pursuant to a previous hearing officer's order. The current matter concerns an expedited due process request from the Parents (hereinafter Parents) addressing the question of whether or not the Extended School Year (ESY) program the District offered to Student for Summer 2010 is appropriate.

## Issues

1. Is the Extended School Year program the Wallingford Swarthmore School District offered to Student for Summer 2010 appropriate?

2. If the District's Extended School Year program is not appropriate, is the Extended School Year program favored by the Parents appropriate?

## Stipulations

The parties stipulated [NT 9-11; P-1 page 4] as follows:

1. Student, date of birth [redacted] resides with [Student's] Parents within the Wallingford-Swarthmore School District and is a child with a disability within the meaning of the IDEA and its implementing regulations and within the meaning of Section 504 of the Rehabilitation Act, and the Parents bring this action on behalf of their child.

2. The District is a Local Educational Agency [LEA] within the meaning of the IDEA, its implementing regulations, and Pennsylvania's Chapter 14 code relating to special education and is a recipient of federal funds within the meaning of relevant federal statutes.

3. Student is an [elementary school aged] child eligible for IDEA services due to a complex cluster of conditions including epilepsy, speech apraxia and sensory-motor problems.

## Findings of Fact

1. Student attends a private school in a neighboring state; the placement is funded by the District pursuant to a December 2009 Order by a Pennsylvania Special Education Hearing Officer. [P-2]

2. The Head of School described the private school as a ten-year-old "small [24 students] specialty school" in another state, with two specific goals: "to educate

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

1

children with learning differences and to educate the community about learning differences". [NT 21-22]

3. Student's commute time to the private school is about 40 to 50 minutes each way. [NT 113]

4. Student was evaluated privately in April 2009 at the request of the Parents and their advocate. The evaluator reported a diagnosis of PDD NOS around 21 months, and soon afterwards diagnoses of verbal and motor apraxia were reportedly conferred. Two months later, in June 2002 seizures reportedly began. The PDD NOS diagnosis was reportedly withdrawn in August 2003. Seizures reportedly resolved at age 5 as a result of a special diet which is maintained to the present. Student reportedly has sensory integration issues. [S-2]

5. Student's most recent cognitive testing with the WISC-IV in April 2009 indicates a Verbal Comprehension Standard Score of 69 and a Perceptual Organization Standard Score of 53, with Working Memory, Processing Speed and Full Scale IQ unable to be calculated. The Leiter-R was used to assess memory and sequential reasoning in more depth. Fluid Reasoning was at a Standard Score of 52 and Brief IQ Index was at a Standard Score of 54, with a Full Scale IQ of 71[1]. The evaluator noted variability/inconsistency [scatter] from expected [typical] levels to moderate levels to high levels depending on the task. [S-2]

6. Student was assessed with an adaptive functioning instrument, the ABS:S2 and the evaluator commented that the results were "somewhat better than predicted based on Full Scale IQ scores". Student's Standard Scores were as follows: Personal Self-Sufficiency 84, Community Self-Sufficiency 68, Personal-Social Responsibility 72, Social Adjustment 86 and Personal Adjustment 77. [S-2]

7. At the private school Student is in the "developmental class" of 4 students who have a different progress reporting format than the other 20 students. [NT 22; P-6]

8. Student's private school Progress Reports from the three marking periods in evidence suggest very slow but incremental progress across reading, mathematics, social/communication/behavior, occupational therapy and speech/language therapy domains. With the exception of 3 of the 20 OT objectives, Student did not advance to the level of "Independent across two instructor, two activities mastered" on any of the 14 reading objectives, the 5 mathematics objectives, the 20 social/communication/behavior objectives, or the 16 speech/language objectives. [P-6]

9. The IEP team met at the private school on March 16, 2010 in order to discuss ESY programming and to begin developing an IEP for the coming school year.

---

[1] Although this score is counterintuitive as the other scores were lower, Student's relatively better performance on certain tasks contributed to this score.

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

Since Student had not been in the District for the 2009-2010 academic year and the private school had not provided any written information to the District, District personnel used the meeting primarily to update their knowledge about Student's needs.  [NT 67, 90]

10. On 3/26/10 the District issued a Notice of Recommended Educational Placement (NOREP) proposing to place Student in an ESY program in the District.  The NOREP did not describe the program.  [NT 105; P-1]

11. The Parents rejected the NOREP on 4/5/10 because "information provided does not indicate the program is appropriate" and checked the box requesting a Due Process Hearing.  In fact the District had not provided any description of the proposed program [P-1]

12. On 4/14/10 the District issued another NOREP describing the proposed program. The Parents did not return the NOREP as either accepted or rejected because they had already filed for due process.  [NT 106; P-1]

13. The District's proposed ESY program is primarily for students with academic, social and behavioral needs and is designed to help them maintain and practice skills. Each child has an individualized schedule. [NT 118, 120]

14. The District's proposed ESY program is located in a District high school building. [P-1]

15. The District's proposed ESY program runs from 6/28/10 through 7/24/10.  Each day starts at 8:30 and ends at 1:30, a total of 5 hours. [NT 120-126; P-1]

16. In the District's proposed ESY program Student would receive Reading and Math support within the day. The instruction could be 1:1 for Student, as it had been when he previously attended the program. [NT 83-84, 127-128; P-1]

17. In the District's proposed ESY program Student would receive 30-minute Speech/Language therapy sessions 4 times per week. [P-1]

18. In the District's proposed ESY program Student would receive 30-minute sessions of Occupational Therapy 3 times per week.  [P-1]

19. In the District's proposed ESY program Student would receive 30-minute sessions of Physical Therapy 2 times per week.  [P-1]

20. Therapies would be group or individual or a combination depending on the decision of the IEP team. [NT 138-139]

21. In addition to the 5-hour daily program, from 6/28/10 through 7/24/10 Student would also receive one 60-minute session of Direct 1:1 Reading instruction per

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

week using an Orton-Gillingham-based model tailored to Student's needs. [NT 78-79, 137-138, 148; P-1]

22. Additionally, between 8/7/10 and 8/27/10 Student would receive 60-minute sessions of Direct 1:1 Reading Instruction 2 times a week using an Orton-Gillingham-based model tailored to Student's needs. [NT 78-79; P-1]

23. Student's proposed District ESY program is based upon Student's present levels of functioning as set forth in the IEP devised by the private school as well as current and past assessments from related service providers. [P-1, P-5]

24. Student can stay focused for about ten minutes, more or less, depending on what Student is doing. [NT 49]

25. When not having Direct 1:1 instruction, Student would receive academic instruction in groups of 4 or 5 children with one teacher and 3 or 4 aides. Specials [art, technology, gym, library] would have groups of 20-25 children with teachers and aides, and Student would have a 1:1 aide. Student would have snack and lunch with 7 or 8 children and socialization activities would be carried out during these times and other times during the day. [NT 122, 124, 128]

26. The private school did not produce a written description of the program it would offer Student. Rather the Parents devised a chart which contained information they believed to be true about the private school's ESY program. The Parents listed incorrect information about the District's proposed ESY program on the chart, for example minimizing the number of days per week, characterizing a 5-hour day as a half-day, indicating that there would be no mathematics instruction, and noting that PT was to be delivered in 20-minute rather than 30-minute sessions. [NT 79-80, 84-85; P-9]

Discussion and Conclusions of Law

Burden of Proof: In November 2005 the U.S. Supreme Court held that, in an administrative hearing, the burden of persuasion for cases brought under the IDEA is properly placed upon the party seeking relief. Schaffer v. Weast, 126 S. Ct. 528, 537 (2005). The Third Circuit addressed this matter as well more recently. L.E. v. Ramsey Board of Education, 435 F.3d. 384; 2006 U.S. App. LEXIS 1582, at 14-18 (3d Cir. 2006). The party bearing the burden of persuasion must prove its case by a preponderance of the evidence. This burden remains on that party throughout the case. Jaffess v. Council Rock School District, 2006 WL 3097939 (E.D. Pa. October 26, 2006). As the Parents asked for this hearing, the Parents bear the burden of persuasion. However, application of the burden of persuasion does not enter into play unless the evidence is in equipoise, that is, unless the evidence is equally balanced so as to create a 50/50 ratio. In the instant matter, the evidence was not in equipoise.

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

Credibility: Hearing officers are empowered to judge the credibility of witnesses, weigh evidence and, accordingly, render a decision incorporating findings of fact, discussion and conclusions of law. The decision shall be based solely upon the substantial evidence presented at the hearing.[2]   Quite often, testimony or documentary evidence conflicts; this is to be expected as, had the parties been in full accord, there would have been no need for a hearing. Thus, part of the responsibility of the hearing officer is to assign weight to the testimony and documentary evidence concerning a child's special education experience. Hearing officers have the plenary responsibility to make "express, qualitative determinations regarding the relative credibility and persuasiveness of the witnesses". Blount v. Lancaster-Lebanon Intermediate Unit, 2003 LEXIS 21639 at *28 (2003).  This is a particularly important function, as in many cases the hearing officer level is the only forum in which the witnesses will be appearing in person.

This hearing officer deferred qualifying the Head of the private school as an expert witness.  Upon close scrutiny of her resume and information that was elicited during testimony it appears that despite her credentials as a teacher and administrator the witness does not have the breadth and depth of experience to qualify as an expert witness in the area of non-verbal learning disabilities.  She holds a Bachelor's Degree in French and a Master's Degree in Reading, is certified as a Reading Specialist in Pennsylvania and New Jersey, is the Head of a very small (24 student) private school for children with learning disabilities and has been in that role for 5 years, she was director of special education (official title was Director of Child Study Team/Social Worker/) at a very small (2 schools total) New Jersey school district for 5 years, has held various other teaching and administrative positions, and the professional organizations to which she belongs are all in the area of Social Work. [P-7]  She listed no publications, and the presentations listed were either not relevant to expertise in learning disabilities or referenced only by acronyms that are unfamiliar to this hearing officer. Thus, this individual is accepted as a fact witness, and as such is not entitled to have her opinions about the appropriateness of the District's ESY program offer regarded as coming from an expert standpoint.

The Parent testified in an engaging and straightforward manner, but her testimony focused largely on her incomplete knowledge of the District's program rather than any inappropriateness of the program and thus contributed little weight to the Parents' burden of proof.  [NT 111-112] Her credibility was somewhat diminished when it became clear that a document she had prepared misrepresented certain specifics of the District's ESY offer such as the number of days per week, the length of the day and the length of the PT sessions.  It was troublesome that the correct information was available to her as presented on the 4/14/10 NOREP.

Legal Basis:
Having been found eligible for special education, Student is entitled by federal law, the Individuals with Disabilities Education Act as Reauthorized by Congress December 2004, 20 U.S.C. Section 600 et seq. and Pennsylvania Special Education Regulations at 22 PA Code § 14 et seq. to receive a free appropriate public education (FAPE).  FAPE is

---

[2] Spec. Educ. Op. No. 1528 (11/1/04), quoting 22 PA Code, Sec. 14.162(f).  See also, Carlisle Area School District v. Scott P., 62 F.3d 520, 524 (3rd Cir. 1995), cert. denied, 517 U.S. 1135 (1996).

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

defined in part as: individualized to meet the educational or early intervention needs of the student; reasonably calculated to yield meaningful educational or early intervention benefit and student or child progress; provided in conformity with an Individualized Educational Program (IEP).

A student's special education program must be reasonably calculated to enable the child to receive meaningful educational benefit at the time that it was developed. (Board of Education v. Rowley, 458 U.S. 176, 102 S. Ct. 3034 (1982); Rose by Rose v. Chester County Intermediate Unit, 24 IDELR 61 (E.D. PA. 1996)). Districts need not provide the optimal level of service, maximize a child's opportunity, or even set a level that would confer additional benefits. What the statute guarantees is an "appropriate" education, "not one that provides everything that might be thought desirable by 'loving parents.'" Tucker v. Bayshore Union Free School District, 873 F.2d 563, 567 (2d Cir. 1989). If personalized instruction is being provided with sufficient supportive services to permit the student to benefit from the instruction the child is receiving a "free appropriate public education as defined by the Act." Polk, Rowley. More recently, the Eastern District Court of Pennsylvania ruled, "districts need not provide the optimal level of services, or even a level that would confer additional benefits, since the IEP required by the IDEA represents only a basic floor of opportunity." S. v. Wissahickon Sch. Dist., 2008 WL 2876567, at *7 (E.D.Pa., July 24, 2008), citing Carlisle, 62 F.3d at 534, citations omitted. See also, Neena S. ex rel. Robert S. v. School Dist. of Philadelphia, 2008 WL 5273546, 11 (E.D.Pa., 2008).

Acknowledging that some students may require programming beyond the regular school year, the federal legislature deemed that Extended School Year services are to be provided to an eligible student if necessary to assure that he student receives a free, appropriate public education (FAPE). 34 C.F.R. §300.106(a)(2). Pennsylvania regulations provide additional guidance for determining ESY eligibility, requiring that the factors listed in 22 Pa. Code §14.132 (a)(2) (i)—(vii) be taken into account.

22 Pa. Code § 14.132(a)(2) (i)—(vii) provides in relevant part:

(a)  In addition to the requirements incorporated by reference in 34 CFR 300.106 (relating to extended school year services), school entities shall use the following standards for determining whether a student with disabilities requires ESY as part of the student's program:

(1)  At each IEP meeting for a student with disabilities, the school entity shall determine whether the student is eligible for ESY services and, if so, make subsequent determinations about the services to be provided.

(2)  In considering whether a student is eligible for ESY services, the IEP team shall consider the following factors; however, no single factor will be considered determinative:

(i)  Whether the student reverts to a lower level of functioning as evidenced by a measurable decrease in skills or behaviors which occurs as a result of an interruption in educational programming (Regression).

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

(ii) Whether the student has the capacity to recover the skills or behavior patterns in which regression occurred to a level demonstrated prior to the interruption of educational programming (Recoupment).

(iii) Whether the student's difficulties with regression and recoupment make it unlikely that the student will maintain the skills and behaviors relevant to IEP goals and objectives.

(iv) The extent to which the student has mastered and consolidated an important skill or behavior at the point when educational programming would be interrupted.

(v) The extent to which a skill or behavior is particularly crucial for the student to meet the IEP goals of self-sufficiency and independence from caretakers.

(vi) The extent to which successive interruptions in educational programming result in a student's withdrawal from the learning process.

(vii) Whether the student's disability is severe, such as autism/pervasive developmental disorder, serious emotional disturbance, severe mental retardation, degenerative impairments with mental involvement and severe multiple disabilities.

(b) Reliable sources of information regarding a student's educational needs, propensity to progress, recoupment potential and year-to-year progress may include the following:

(1) Progress on goals in consecutive IEPs.

(2) Progress reports maintained by educators, therapists and others having direct contact with the student before and after interruptions in the education program.

(3) Reports by parents of negative changes in adaptive behaviors or in other skill areas.

(4) Medical or other agency reports indicating degenerative-type difficulties, which become exacerbated during breaks in educational services.

(5) Observations and opinions by educators, parents and others.

(6) Results of tests, including criterion-referenced tests, curriculum-based assessments, ecological life skills assessments and other equivalent measures.

(c) The need for ESY services will not be based on any of the following:

(1) The desire or need for day care or respite care services.

(2) The desire or need for a summer recreation program.

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

(3) The desire or need for other programs or services that, while they may provide educational benefit, are not required to ensure the provision of a free appropriate public education.

In determining whether the District has offered an appropriate ESY program, as is the case for determining whether a District has offered an appropriate IEP, the proper standard is whether the proposed program is reasonably calculated to confer meaningful educational benefit. Rowley "Meaningful benefit" means that an eligible student's program affords him or her the opportunity for "significant learning." *Ridgewood Board of Education v. N.E.*, 172 F.3d 238 (3RD Cir. 1999).

Almost 30 years ago, in *Battle v. Pennsylvania*, 629 F.2d 269 (3d Cir. 1980), *cert. denied*, 452 U.S. 968 (1981), the federal courts declared unequivocally that school districts must determine ESY services on an *individualized* basis and consider all components of a student's educational needs. The Pennsylvania Department of Education Basic Education Circular on Extended School Year services specifically directs the IEP team to consider the extent to which students have mastered and consolidated specific skills. Further, the team must consider the extent to which a skill or behavior is particularly crucial for the student to meet the IEP goals of self-sufficiency or independence from caretakers.

Discussion:
Although the Parents and the Head of the private school provided no evidence that the private school formally recorded or reported any regression/recoupment data as per 22 Pa. Code § 14.132(a)2i, 2ii and 2iii, the District does not challenge Student's entitlement to ESY as Student deserves consideration under the factors in 22 Pa. Code § 14.132(a)2 iv and 2v. Therefore, eligibility is not an issue with respect to a summer program for Student.

Having agreed that Student is eligible for ESY services, the District was obligated to develop an ESY program for Student or allow the ESY program to be provided at the private school. Questioning of the director of special education for the District by Parents' counsel seemed to be directed towards having the District provide a rationale for why it rejected the ESY program offered by the private school. [NT 76-77]. This is not the issue. Districts have the right and the prerogative to offer programming, including ESY, to students within its boundaries. In the instant matter, the District did offer a program. The only issue to be determined is whether the District offered an appropriate program.

This hearing officer has determined that the District's proposed ESY is appropriate and sufficient for the purposes for which ESY is offered, that is maintenance and practice of skills. The District met with the Parents and private school staff, gathered information about Student's needs and progress presented by the private school orally and in written form through Student's IEP and Progress Reports, and fashioned a program to meet Student's needs. [FF 9]

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

The District's offered ESY program is to be carried out in the context of a summer school program that is structured to serve a group of students with similar special needs, and the program also provides additional services to Student in consideration of Student's individual needs. [FF 13] As part of the summer school program, Student will receive daily reading and mathematics instruction individually or in small groups. [FF 16] Student will receive speech/language four times a week, occupational therapy three times a week, and physical therapy two times per week. [FF 17, 18, 19, 20] Student will receive daily social skills training and daily behavioral intervention. Student will be in Student's home district. When Student is in larger groups Student will have a 1:1 aide. Individually, specifically for Student, Direct 1:1 Reading Instruction would be provided once a week outside the summer school program hours, and twice a week for three weeks after the summer school program ends. [FF 21, 22]

This program is reasonably calculated to allow Student to maintain and practice skills in Student's areas of need, as well as to likely advance in skill levels through provision of Direct Instruction. Student will be in his home district. Student will have an extra one and a half hours of free time during the day since Student will not be traveling. [FF 3]

This hearing officer acknowledges and understands that Parents' concerns about continuity and predictability for Student forms at least part of the basis for their desire to keep Student in the private school for the summer. However, mother testified that Student requires and seeks information and reassurance about what is going to happen in order to be able to transition and to manage Student's anxiety [NT 101, 109-110]. She did not testify that Student was unable to transition or required an inordinate amount of time to become accustomed to a new situation. The District and the Parent will be ordered to engage in an orientation program prior to the start of the ESY program.

The only thing about which this hearing officer has a concern is the length of the sessions of Direct Reading Instruction, that is whether it was anticipated that the 60 minutes would be presented in one day, or in two days when the service is doubled. As the Head of the private school's observation about Student's short attention span was credible and supported by the testing performed in April 2009, the District will be ordered to provide the Direct Instruction in 30-minute blocks rather than 60-minute blocks, and given that the District's program is one week shorter than listed on the NOREP, an additional week of Direct Reading Instruction will be ordered.

### Conclusion

Based upon the evidence presented at the expedited due process hearing in this matter, and the applicable law relating to ESY eligibility and appropriate programs and services, this hearing officer concludes that the District has offered an appropriate ESY program to Student for Summer 2010. As the District has offered an appropriate program, there is no need to examine the appropriateness of the program offered by the private school.

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

As is within the discretion of the hearing officer, three modifications to the District's proposed program, will be ordered.  These modifications are outlined in the Order below and address orientation activities, duration of Direct Reading Instruction, and length of sessions of Direct Reading Instruction.

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

Order

It is hereby ordered that:

1.  The Extended School Year program the Wallingford Swarthmore School District offered to Student for Summer 2010 is appropriate.

2.  The program shall be modified as follows:

    i)   As Student requires preparation and reassurance to manage transitions, prior to Student's beginning the ESY program, the Parents and the District will arrange a time for Student to visit the building where the summer program is to be held and the rooms where the program will be delivered. At that time Student will be introduced to the teacher, and if feasible the aides, who will be providing the program.

    ii)  As the District's program is one week shorter than set forth in the final NOREP, Student's Direct 1:1 Reading Instruction will begin the week of August 2nd rather than the following week.

    iii) As the Student's attention span is limited, the Direct 1:1 Reading Instruction is to be delivered in 30-minute segments such that Student receives two 30-minute segments weekly during the course of the summer school program rather than one 60-minute segment weekly, and four 30-minute segments weekly from August 2nd through August 27th rather than two 60-minute segments.

    iv)  Further, given that the Direct 1:1 Reading Instruction is in addition to the operating hours of the summer program, and presuming that the Parents are to schedule the additional Direct 1:1 Reading Instruction with the instructor, at least two weeks prior to the beginning of the service the District shall identify the provider of this service and give the Parents and the instructor one another's contact information. The Parents and the instructor are to make reasonable accommodations for one another's summer schedules such that if necessary more or fewer 30-minute sessions may be delivered weekly as long as the total amount of time [13 hours] is provided.

    v)   If the District fails to identify a provider at least two weeks prior to the beginning of the Direct 1:1 Reading Instruction service, or if the District and the Parents agree, the Parents may procure the service and remit the invoices to the District. The amount of this service billed to the District may not exceed 13 hours (5 weeks at 60 minutes and 4 weeks at 120 minutes).

June 5, 2010                    Linda M.
Valentini, Psy.D., CHO
Date                            Linda M. Valentini, Psy.D., CHO
                                Special Education Hearing Officer
                                NAHO Certified Hearing Official

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa)
Exh. 1 to Joint Stipulation of Facts Related to                    |
Motion for Preliminary Injunction

1

2

3           OFFICE FOR DISPUTE RESOLUTION

4                   IN RE:   M        C.

5      Wallingford-Swarthmore School District

6                   -  -  -  -  -

7             File No. 9882/08-09 LS

8                   Volume I

9

10            Due Process Hearing held in

11     the above-captioned matter before

12     Anne Carroll, Hearing Officer, taken at

13     the Wallingford-Swarthmore School

14     District, 101 Plush Mill Road,

15     Wallingford, Pennsylvania, on Friday,

16     April 17, 2009 at 12:35 p.m.

17                   -  -  -  -  -

18

19

20        ANTHONY GRAVINESE & ASSOCIATES

          Registered Professional Reporters

21           1187 MacPherson Drive

       West Chester, Pennsylvania  19380

22         Telephone:  (610) 696-8990

             Fax:  (610) 692-1187

23

24

25

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
1

2    BEFORE:          Anne Carroll, Esquire

                      Hearing Officer

3

4

5    APPEARANCES:     Karl Romberger, Esquire

                      On behalf of the

6                     Wallingford-Swarthmore

                      School District

7

8                     Catherine Reisman, Esquire

                      On behalf of M      C.

9

10

11

12   STENOGRAPHER:  Elaine DiDomenicis

13

14

15

16

17

18

19

20

21

22

23

24
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

25

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
1                    I N D E X

2    WITNESS                    EXAMINATION

3    (No witnesses)

4                      - - - - -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
1                 E X H I B I T S

2   NUMBER              MARKED        ADMITTED

3    (None marked)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
1                  - - - - -

2                PROCEEDINGS

3                  - - - - -

4           THE HEARING OFFICER:  Good

5    afternoon.  The Due Process Hearing for

6    M     C      , file number

7    9882/08-09 LS is hereby convened.

8           We have not gone on the record

9    right away this morning, because I

10   understand the parties who are

11   represented here today -- and that is Mr.

12   and Mrs. C       and their attorney,

13   Catherine Reisman, Esquire, and the

14   School District represented by

15   Ron Van Langeveld, and also the attorney

16   for the School District is Karl

17   Romberger, Esquire -- I have been

18   informed that the parties have reached a

19   date -- an agreement regarding the

20   extended school year issue that we came

21   together for this morning for the

22   hearing.

23           Is that an accurate statement?

24           MS. REISMAN:  Yes.

25           THE HEARING OFFICER:  And Mr.
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

1    Romberger?

2              MR. ROMBERGER:  Yes, that is

3    correct.  Can I just have the record

4    reflect also that Gina Ross is present?

5              THE HEARING OFFICER:

6    Oh, I'm sorry.  Yes, certainly.  Gina

7    Ross is with the School District.

8              So I believe the parties at

9    this point would like to put the terms of

10   that agreement on the record.  Is that

11   accurate?

12             MS. REISMAN:  Yes, it is.

13             MR. ROMBERGER:  Yes.

14             THE HEARING OFFICER:  Go

15   ahead.

16             MS. REISMAN:  The parties

17   agree that, in settlement of their

18   dispute regarding extended school year,

19   school year services, the

20   Wallingford-Swarthmore School District

21   will provide the following services to

22   M      C        during the summer of

23   2009.

24             Shining Stars Program from

25   June 29 through July 24, 2009.  Within

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

1      the Shining Stars program 90 minutes per

2      week of occupational therapy, either

3      group or push-in.  Within the Shining

4      Stars program 90 minutes per week of

5      physical therapy, either group or

6      push-in.

7            During that time, three times

8      30 minutes a week of speech and language

9      therapy with Sue Caspari, and one time 30

10     minutes per week of speech and language

11     within the Shining Stars program.

12           Transportation for all of the

13     foregoing is to be provided by the

14     District.  The District will also provide

15     direct one to one instruction in reading

16     by an individual trained in a systematic,

17     multi-sensory, research-based, phonemic

18     reading program, Lindamood-Bell, with

19     training and certification details to be

20     provided to the parents by June 1st.

21           If the District cannot locate

22     an appropriately certified, trained or

23     certified tutor by June 1st the District

24     will obtain a tutor through

25     Lindamood-Bell in Bryn Mawr.

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
1                    M    will receive a minimum of
2          four to five hours and a maximum of 80
3          hours of direct one to one instruction.
4          The amount of one to one instruction will
5          be determined by data review on or before
6          July 20th, 2009 by recommendation of the
7          District Lindamood-Bell tutor in
8          conjunction with Krista Seitzinger or her
9          designee.
10                   The District will also provide
11         a total of 20 hours of occupational
12         therapy and physical therapy at A Total
13         Approach during the summer between June
14         15th and September 4th, 2009 with
15         scheduling determined between the parents
16         and A Total Approach, and transportation
17         provided by the parents.
18                   The parties acknowledge that
19         the execution of this agreement is
20         without prejudice to either party's
21         position regarding the claims and
22         defenses, including claims for prevailing
23         party attorney fees raised in this
24         matter.
25                        THE HEARING OFFICER:  Mr.
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
 1      Romberger, does that reflect your
 2      understanding of the agreement?
 3                  MR. ROMBERGER:  Correct.  On
 4      behalf of the District that is
 5      acceptable.
 6                  HEARING EXAMINER:  And I
 7      assume the parents having heard it and it
 8      is acceptable to the parents.  Is that
 9      accurate?
10                  MS. C        :  Yes.
11                  MR. C        :  Yes.
12                  THE HEARING OFFICER:  And Mr.
13      Van Langeveld?
14                  MR. VAN LANGEVELD:  Yes.
15                  THE HEARING OFFICER:  All
16      right.  Well, thank you very much.  Then
17      in that case we can adjourn the hearing
18      today for M       C       .
19                  I believe there are additional
20      issues under the regular IDEA at statute
21      time lines, statutory time lines, and I
22      believe we have agreed, at least
23      tentatively, to reconvene for the rest of
24      the hearing on May 21st.
25                  Is 10:00 a.m. an acceptable
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
 1      time?  Is that a good time for you both?

 2                  MR. ROMBERGER:  That's fine

 3      with me.  We just need to confirm the

 4      District's availability.

 5                  THE HEARING OFFICER:  Okay.

 6      Well, you can do that by e-mail and I

 7      will wait to have the notices sent out

 8      until it's confirmed.

 9                  All right.  Is there anything

10      further to be heard today then?

11                  MS. REISMAN:  No.

12                  MR. ROMBERGER:  No.

13                  THE HEARING OFFICER:  Okay.

14      Thank you very much.  Then in that case

15      we are adjourned for today to reconvene,

16      we hope, on May 21st.  Thank you.

17                  (Hearing concluded at 12:49

18      p.m.)

19

20

21

22

23

24

25
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction

```
 1                    CERTIFICATE

 2                    I, Elaine DiDomenicis,

 3     Certified Shorthand Court reporter and

 4     Notary Public, do hereby certify that the

 5     foregoing Due Process Hearing in the matter

 6     of M      C. was held before Anne Carroll,

 7     Hearing Officer, at the

 8     Wallingford-Swarthmore School District, 101

 9     Plush Mill Road, Wallingford, Pennsylvania,

10     on Friday, April 17, 2009; that said witness

11     was duly sworn before the commencement of

12     their testimony; that the testimony of said

13     witness was written in shorthand by myself

14     and reduced to typing under my direction and

15     control; that the foregoing is a true and

16     correct transcription of the testimony; that

17     I am not related to or employed by any of

18     the parties, or their attorneys or agents,

19     or interested directly or indirectly in the

20     matter in controversy either as counsel,

21     attorney, agent, or otherwise.

22                    Elaine DiDomenicis

23                      Court Reporter

24

25
```

M.C. v. Wallingford-Swarthmore SD, No. 10-cv-2804 (E.D. Pa.)
Exhibit 2 to Joint Stipulation of Facts Related to
Motion for Preliminary Injunction